IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PENN MUTUAL LIFE INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GREATBANC TRUST COMPANY, as Trustee )<br>of the NATALIE ROSENBLATT-SPITZER )<br>2007 INSURANCE TRUST, NATALIE )<br>ROSENBLATT-SPITZER, KEVIN BECHTEL, )<br>AND STEVEN BRASNER, )<br>)<br>Defendants. ) | Case No. 09 C 6129<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Penn Mutual Life Insurance Company believes that Natalie Rosenblatt-Spitzer and two insurance agents, Kevin Bechtel and Steven Brasner, unlawfully initiated a "stranger originated life insurance" policy to insure Rosenblatt-Spitzer's life for the benefit of a complete stranger. Penn Mutual seeks a declaratory judgment that the policy was void *ab initio* based on material misrepresentations by the Defendants and that the policy lacks an insurable interest. One of the Defendants, Kevin Bechtel, moves to dismiss, arguing that the Court lacks personal jurisdiction over him and that Penn Mutual fails to state a claim. A second Defendant, the GreatBanc Trust Company, filed a counterclaim seeking its own declaratory judgment. Penn Mutual moves to dismiss GreatBanc's counterclaim.

### I. Factual Background

Penn Mutual alleges that the policy it issued to the Natalie Rosenblatt-Spitzer 2007 Insurance

1

Trust (the Trust) insuring Rosenblatt-Spitzer's life, is a stranger initiated life insurance (STOLI) policy. STOLI transactions violate state insurable interest laws because the policy owner (the STOLI investor who acquires an interest in the policy, often by purchasing an interest in an insurance trust that owns the policy) does not have a legally cognizable interest in the longevity of the insured at the time the policy is issued. STOLI investors, understandably, target individuals over the age of seventy with high net worths — who both can obtain large policies and do not have a lengthy life expectancy.

Penn Mutual alleges that Bechtel and Brasner approached Rosenblatt-Spitzer in June 2007 to participate in a STOLI scheme. Rosenblatt-Spitzer was to create a trust that would be the owner and beneficiary of the policy to obscure the transfer of the policy's benefits to an investor in the secondary market. Rosenblatt-Spitzer was 71 years old at the time she signed the policy, and she identified the Trust as the owner of the policy and GreatBanc as the trustee. Both Rosenblatt-Spitzer and GreatBanc indicated that they had not been approached about selling the policy on the secondary market. The application also indicated that the premiums would not be paid with funds that are borrowed or otherwise financed. Pen Mutual claims that these representations were false.

Shortly after Rosenblatt-Spitzer and GreatBanc signed the application, Kevin Bechtel and Steven Brasner completed an Agent's Underwriting Report in their capacity as soliciting agents for the Trust. Like Rosenblatt-Spitzer and GreatBanc, neither Bechtel nor Brasner indicated that they had discussed selling the policy on the secondary market or that the premiums for the policy would be paid with borrowed funds. The underwriting report indicated that Brasner was to receive 60% of the commission for the sale of the policy and Bechtel to receive 40% of the commission. Only one of the two agents signed the policy, however.

Penn Mutual alleges that based on the Defendants' representations, it issued the policy, but that shortly after issuing the policy and in accordance with a preconceived plan, Rosenblatt-Spitzer transferred the interest in the Trust to an investor with no relationship to her in exchange for a payment. Penn Mutual alleges that it has received $240,969.22 in premiums and has incurred significant expenses, costs and damages. Penn Mutual asks the Court to declare that the Defendants made material misrepresentations in procuring the policy and that it is void *ab initio* because of these misrepresentations and because the policy lacks an insurable interest.

GreatBanc answered the Complaint, raising six affirmative defenses — among them a defense of unclean hands based on the theory that Penn Mutual should be responsible for the misrepresentations of its agents (Bechtel and Brasner), a defense of waiver and estoppel based upon a similar theory. GreatBanc also filed a Counterclaim, in which it seeks its own declaratory judgment — that the policy is valid, that Penn Mutual is bound by the conduct of its agents, that any fraud or misrepresentation by Penn Mutual's agents should be imputed to Penn Mutual and that Penn Mutual is liable for any damages caused by its agents. GreatBanc also sought contribution, but agrees that this claim should be dismissed.

## II. Analysis

### A. *Bechtel's Motion to Dismiss*

The Court turns first to Bechtel's assertion that the Court lacks personal jurisdiction over him. Bechtel asserts that he does not have nor has ever had any contact with the state of Illinois and therefore lacks sufficient contacts with the state of Illinois for this Court to assert jurisdiction over him. He states further that he has never spoken with Rosenblatt-Spitzer or Brasner while any of them were in Illinois. He claims that he did not sign the Underwriting Report.

3

Bechtel carefully crafts the statements in his affidavit to leave the impression that he did not engage in any conduct with regard to the Rosenblatt-Spitzer policy. But what he does not say is more telling than what he does say. Bechtel does not deny that he had a relationship with Brasner and Rosenblatt-Spitzer, as Penn Mutual alleges. Nor does he deny that he ever approached Rosenblatt-Spitzer to issue a life insurance policy. Rather, he simply claims that any contact he had with Brasner and Rosenblatt-Spitzer did not occur in Illinois. Similarly, Bechtel does not deny that his name and agent number appear on the Underwriter's Report or deny that he received a 40% commission from Penn Mutual for the sale of this policy. Rather, he simply claims that he did not sign the Report. Moreover, contrary to Bechtel's claim that he conducts no business in Illinois, he has sought and maintained a license to sell insurance in Illinois since 2006.

Federal Rule of Civil Procedure 12(b)(2) allows non-resident defendants to challenge the Court's assertion of jurisdiction over them. Fed. R. Civ. P. 12(b)(2). Under Rule 12(b)(2) the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether to exercise personal jurisdiction, a court may examine affidavits and other evidentiary materials submitted by the parties, but a court takes allegations in the Complaint as true unless controverted by a defendant's affidavit. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). However, if the Court determines that material facts are in dispute, it may hold an evidentiary hearing to resolve the dispute. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In this case, the material facts are not in dispute.

A federal court exercising diversity jurisdiction has personal jurisdiction over a defendant only if a corresponding state court would have personal jurisdiction. *Citadel Group Ltd. v.*

4

*Washington Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The exercise of jurisdiction must also satisfy the due process guarantees of the Illinois and United States Constitutions. *RAR, Inc.*, 107 F.3d 1276. Because there is no operative difference between the limits imposed by the state and federal due process clauses, a court need only make a single due process inquiry under federal law. *Hyatt Intern. Corp.*, 302 F.3d at 715.

The Illinois Long-Arm Statute lists activities which permit Illinois courts to exercise jurisdiction over out-of-state defendants. 735 ILCS 5/2-209(a). The Long-Arm Statute allows Illinois courts to exercise jurisdiction over non-resident defendants that: (1) transact any business within Illinois. 735 ILCS 5/2-209(a)(1). Bechtel has transacted business within Illinois.

Bechtel claims that the mere fact that he holds a license to sell insurance in Illinois (and has since November 2006), does not necessarily mean that he conducted business in Illinois. But Bechtel ignores the fact that nowhere in his affidavit does he dispute Penn Mutual's allegations that: 1) he approached Rosenblatt-Spitzer to purchase insurance; 2) he did so with the intent to engage in a STOLI scheme; 3) he received a commission from the sale of the Rosenblatt-Spitzer insurance policy; and 4) that policy was applied for and issued in Illinois (at GreatBanc's offices). The Court therefore takes these allegations as true for the purposes of resolving Bechtel's motion.

A person who is professionally licensed within a state and who solicit business with someone who has an Illinois connection transacts business within Illinois. *Beale v. Revolution Portfolio, LLC*, NO. 07 C 6909, 2008 WL 4614310, at * 3 (N.D. Ill. Oct. 16, 2008); *see also Nalco v. Envtl. Mgmt., Inc.*, NO. 08 C 2708, 2009 WL 890026 (N.D. Ill. Mar. 31, 2009). Bechtel argues that *Beale* is inapposite because the court relied on a waiver of service to find that it had personal jurisdiction over

the defendant. To the contrary, however, the court in *Beale* explicitly noted that waiver of service does not waive an objection to personal jurisdiction. *Beale*, 2008 WL 4614310, at *3. Bechtel sought out and obtained a license to sell insurance in Illinois, he solicited business from Rosenblatt-Spitzer who traveled to Illinois to complete the insurance application, an Underwriting Report with his agent number upon it was completed after Rosenblatt-Spitzer applied for the insurance, and he received a commission from an insurance policy issued in Illinois. That is enough to demonstrate that he transacted business within the state of Illinois.

Still, the exercise of jurisdiction must comport with due process. The Supreme Court instructs that to satisfy the federal due process inquiry, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contacts must be sufficient to create a "substantial connection" between the defendant and the forum state. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Where a defendant has "purposely avail[ed]" himself of the privilege of conducting activities within the forum state he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewivz*, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Here, by obtaining and maintaining a license to sell insurance in Illinois and by receiving a commission on a policy issued in Illinois, Bechtel has purposefully availed himself of the benefits and protections of Illinois law. As a soliciting agent on a policy issued in Illinois, Bechtel created continuing obligations between himself and the citizens of Illinois, who have an interest in the lawfulness of agents doing business within Illinois. *Burger King Corp.*, 471 U.S. at 476. Further,

Bechtel has acted as a soliciting agent in another transaction in Illinois (coincidentally with the same Trust company) that Penn Mutual alleges was part of a STOLI scheme. *See Penn Mutual Life Ins. Co. v. GreatBanc Trust Co. et al*, No. 09 C 6366 (N.D. Ill.). Bechtel thus has acted as an agent in at least two insurance agreements that were issued in Illinois, either by soliciting the policy or in receiving a commission for it. It is not unreasonable for Bechtel to expect that his actions in soliciting insurance contracts issued within the state of Illinois might result in being haled into court in this state.

The Court DENIES Bechtel's Motion to Dismiss for lack of personal jurisdiction.

Bechtel also argues that the Penn Mutual's claims against him should be dismissed for failure to state a claim. His arguments merit little discussion. Bechtel first argues Penn Mutual's claims should be dismissed because he did not sign the Underwriting Report. First, Bechtel's argument depends upon facts outside of the pleadings. Penn Mutual alleges that either Bechtel or Brasner signed the report. The Court must accept that allegation as true; Bechtel's affidavit, alleging that he did not, is a matter outside the pleadings that the Court may not consider. *Continental Cas. ins. Co. v. Am. Nat'l. Ins. Co.*, 417 F.3d 727, 731 (7th Cir. 2005). Even if the Court were to consider Bechtel's affidavit, Penn Mutual alleges that Bechtel solicited Rosenblatt-Spitzer and worked with Brasner to create the STOLI scheme. The Underwriting Report also demonstrates that Bechtel received a commission from the issuance of the policy. Thus, even if Bechtel did not in fact sign the report, Penn Mutual still has put forth sufficient allegations that Bechtel participated in the STOLI scheme.

Bechtel next argues that the economic loss rule bars plaintiff's recovery. The economic loss rule, however, does not apply where a plaintiff's damages are caused by fraud. *In re Chicago Flood*

7

*Litigation*, 176 Ill. 2d 179, 199, 680 N.E.2d 265 (1997).

The Court DENIES Bechtel's Motion to Dismiss for failure to state a claim.

*B.     GreatBanc's Counterclaims*

The Declaratory Judgment Act allows a party to bring a lawsuit based on a reasonable apprehension that it will be sued. *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009). The Act allows a party to avoid the accrual of avoidable damages to a party who is not certain of its rights with an early adjudication of the rights and obligations of the parties. *Medical Assur. Co. v. Hellman*, — F.3d —, 2010 WL 2473219, at *6 (7th Cir. Jun. 21, 2010). The Act, however, does not expand the jurisdiction of the federal courts, and the party seeking a declaratory judgment must present a justiciable controversy. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Nor does the Act affect the underlying substantive state and federal laws that define the rights of the parties. *Id.* In addition, the Act gives courts discretion to declare the rights of litigants, and a court thus has discretion to stay or dismiss a suit seeking a declaratory judgment. 28 U.S.C. § 2001(a); *Medical Assur. Co.*, 2010 WL 2473219, at *6-8.

Courts in this circuit have routinely dismissed counterclaims that merely restate the declaration sought by the plaintiff from the opposite perspective on the grounds that such pleadings are duplicative and merely complicate the pleadings. *See, e.g., Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.*, 05 C 6656, 2006 WL 3782916 (N.D. Ill. Dec. 20, 2006); *Lincoln Nat'l Corp. v. Steadfast Ins. Co.*, No. 06-C-58, 2006 WL 1660591 (N.D. Ind. Jun. 9. 2006); *United States v. Zanfei*, 353 F. Supp. 2d 962 (N.D. Ill. 2005); *Employer Ins. of Wasau v. Pacer Int'l, Inc.*, No. 04 C 45643, 2005 WL 61481 (N.D. Ill. Jan. 11, 2005); *GNB, Inc. v. Gould, Inc.*, No. 90 C 2413, 1990

WL 207429 (N.D. Ill. Nov. 30, 1990); *Rayman v. Peoples Sav. Corp.*, 735 F. Supp. 842 (N.D. Ill. 1990); *Green Bay Packaging, Inc. v. Hoganson & Assoc., Inc.*, 362 F. Supp. 78 (N.D. Ill. 1973); *see also Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1370 (7th Cir. 1985) (citing *Green Bay Packaging* with approval). GreatBanc's first request for declaratory relief — asking the Court to declare the insurance contract valid — clearly mirrors Penn Mutual's claim.

Further, GreatBanc's second and third request for declaratory relief — asking the Court to declare that Penn Mutual is bound by the conduct of its agents and any fraud by those agents should be imputed to Penn Mutual — mirror its affirmative defenses. Counterclaims that mimic affirmative defenses are no less duplicative of counterclaims that mirror the plaintiff's request for declaratory relief. *Rayman*, 735 F. Supp. at 852-53; *see also Ortho-Tain*, 2006 WL 3782916, at *3; *Zanfei*, 353 F. Supp. 2d at 967. The Court in *Rayman* noted that the Federal Rules of Civil Procedure support such a conclusion, observing that Rule 8(c) directs a court to redesignate a counterclaim that was erroneously pleaded as an affirmative defense and vice versa. *Rayman*, 735 F. Supp. at 853 (citing Fed. R. Civ. P. 8(c)).

GreatBanc cites to cases outside this circuit to suggest a contrary approach, but the logic of those cases is not convincing (indeed, the principal case on which GreatBanc relies, *Princpal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562 (D. Del. 2009), does not address whether the counterclaim is duplicative of issues raised in affirmative defenses). GreatBanc also argues that its counterclaims are not in fact duplicative of its affirmative defenses, suggesting that its affirmative defenses "posit wholly different legal theories." GreatBanc baldly states that none of its affirmative defenses "seek the declaration sought in the counterclaims that the agents are agents of [Penn Mutual.]" But Paragraph 68 of GreatBanc's answer states exactly that: "[t]he insurance

9

agent(s) who procured the Policy was an agent of [Penn Mutual.]" Other than GreatBanc's clearly erroneous representation of its affirmative defense, it makes absolutely no effort to explain why its counterclaims are not duplicative of its affirmative defenses, and its argument merits no discussion.

GreatBanc's final request for relief is for a declaration that Penn Mutual is liable for damages caused by its agents. Penn Mutual argues that this request is not justiciable. As noted earlier, the Act does not expand or affect the underlying substantive rights of the parties. *Aetna Life Ins. Co.*, 300 U.S. at 240-41. Thus, a request for a declaratory judgment must be tied to an actual claim under state or federal law. GreatBanc argues that there is an actual controversy as to whether misrepresentations made by alleged agents of Penn Mutual could be imputed to Penn Mutual, but it fails to identify any substantive claim under which this relief could be sought. Rule 8 requires parties to make a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). GreatBanc has failed to do so, and instead merely demanded relief.

The Court finds that GreatBanc's counterclaim duplicates issues already before this Court or raises issues that are not justiciable. The Court GRANTS Penn Mutual's Motion to Dismiss the GreatBanc's Counterclaim.

IT IS SO ORDERED.

7/21/10
Dated

Hon. William J. Hibbler
United States District Court