**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE PENN MUTUAL LIFE INSURANCE COMPANY ) ) ) | |
| Plaintiff, ) ) | No. 09 C 06129 |
| v. ) ) | Judge John J. Tharp, Jr. |
| GREATBANC TRUST COMPANY, ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Stranger-owned life insurance, or STOLI, entails the maintenance of a life insurance policy by an investor who has no insurable interest in the life of the insured. Although the arrangement is unremarkable some cases, such as when an insured sells a policy on the open market as a means of liquefying the asset, other times it violates state common or—increasingly—statutory law. The term "STOLI" (or "SOLI" or "IOLI") is more often applied in the latter case, for instance when a policy is originally taken out by a third party without an insurable interest, or when the insured procures the policy on his or her own life and immediately transfers it to an investor. These scenarios do not always run afoul of state laws, *e.g., Kramer v. Phoenix Life Ins. Co.*, 940 N.E. 2d 535 (N.Y. 2010), but they often do, and here the parties agree that the policy at issue was procured unlawfully. The principle underlying the law's aversion to STOLI is the longstanding public policy against wagering contracts. *See, e.g., Grigsby v. Russell*, 222 U.S. 149, 154 (1911) ("A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end."); *Guardian Mut. Life Ins. Co. v. Hogan*, 80 Ill. 35 (1875).

In this case, Plaintiff Penn Mutual Life Insurance Company alleges that it was defrauded by an unlawful STOLI scheme that resulted in the issuance of policy to an insurance trust, the beneficiary of which had no insurable interest in the life of Natalie Rosenblatt-Spitzer, the insured. Defendant Greatbanc Trust Company (the "Trustee") is trustee of the Natalie Rosenblatt-Spitzer Insurance Trust ("NRSI Trust"). Although it is still the nominal owner and beneficiary of the policy, the Trustee transferred the beneficial interest to the GIII Accumulation Trust, an institutional investor, almost concurrently with the issuance of the policy and establishment of multiple trusts that facilitated the transfer. The Trustee now concedes that the Rosenblatt-Spitzer policy was procured unlawfully, but it disclaims knowledge of or participation in the scheme. Instead, the Trustee[1] points the finger at Ms. Spitzer (who is no longer a defendant) and the insurance agents who sold the policy and did the underwriting.

Before the Court are a number of motions addressed to the consequences of the Trustee's relatively recent admission that the policy was indeed an illegal STOLI arrangement. The Trustee amended its answer and now concedes that Penn Mutual is entitled to a judicial declaration that policy is void. Specifically, the Trustee admits:

- The Spitzer Policy "is 'void or voidable,'" and Penn Mutual is entitled to "a judicial declaration that the Rosenblatt-Spitzer Policy is void *ab initio*." Amended Answer ¶ 1 (Dec. 5, 2011).

- The application for insurance contained at least one misrepresentation. *Id.* ¶ 39.

- The Underwriting Report contained misrepresentations. *Id.* ¶ 40

- Material misrepresentations were made to Penn Mutual "concerning the source of funds for the premium payments on the Rosenblatt-Spitzer Policy." *Id.* ¶ 50

---

[1] GIII is not a named defendant but has provided an affidavit to the effect that it was also duped by misrepresentations about the validity of the Policy.

2

- "Penn Mutual is . . . entitled to a judicial declaration that, pursuant to applicable law, the Rosenblatt-Spitzer Policy is void *ab initio*, as it was issued by Penn Mutual in reliance upon material misrepresentations." *Id.* ¶ 55

- "[T]he Rosenblatt-Spitzer Policy lacked a valid insurable interest at inception." *Id.* ¶ 57, 58.

- "Under applicable law, Penn Mutual is entitled to a judicial declaration that the Rosenblatt-Spitzer Policy lacked an insurable interest at inception and is therefore void *ab initio*." *Id.* ¶ 60.

Based primarily upon the Trust's amended answer,[2] Penn Mutual moved for summary judgment on Counts I and II of its Complaint, which seek a declaratory judgment that the policy is void *ab initio* because it was procured through material misrepresentations and in the absence of a valid insurable interest. In addition to these declarations, Penn Mutual asks the Court to order that it may retain the policy premiums it has collected to date. Toward that end, Penn Mutual also moves for summary judgment on the Trustee's counterclaims: Count I, in which the Trustee requests rescission of policy premiums paid to Penn Mutual, and Count II, in which the Trustee seeks to recoup the premiums on a theory of unjust enrichment.. Penn Mutual filed its motion on December 19, 2011.

The Trustee responded to the summary-judgment motion on January 30, 2012. Consistent with its amended answer, the Trustee concedes that Penn Mutual is entitled to a judicial declaration that the policy is void *ab initio*. However, the Trustee argues that summary judgment on the issue of the premiums cannot be granted because the remedy available when a contact is declared void *ab initio* turns on the parties' relative culpability, as to which there are many disputed facts.

---

[2] Penn Mutual submits additional evidence, including the affidavit of Ms. Spitzer herself, in which she describes a scheme in which she was paid to apply for and transfer a life insurance policy that she did not need and did not intend to keep.

For that reason, on January 30, the Trustee moved pursuant to Federal Rule of Civil Procedure 56(d) to deny or stay the summary-judgment motion pending further discovery.[3] In that motion, the Trustee contends that, to determine the fate of the premiums, additional discovery is needed about its alleged involvement in or knowledge of the pre-issuance scheme to defraud Penn Mutual, as well as Penn Mutual's own culpability in issuing the policy or allowing it to stand. Penn Mutual opposes the Trustee's Rule 56(d) motion, questioning the Trustee's good faith in filing it at all in light of the Trustee's third pleading of January 30—a Rule 12(c) motion insisting that the whole case should be resolved on the pleadings alone.

In its motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Trustee—in stark contradiction of its summary-judgment response and Rule 56(d) motion—argues that the entire case, including the appropriate disposition of the premiums, can be decided on the face of the Complaint and Amended Answer alone. According to the Trustee, Illinois law is clear that only appropriate remedy for a voided life insurance policy is to rescind it and return the parties to the *status quo ante*. Thus, the motion requests (or at least acquiesces to) a declaration that the policy is void, but also seeks the return of all premiums to the Trust.[4]

## **DISCUSSION**

The Court takes up all three pending motions together. For the reasons that follow, the Trust's motions are denied; Penn Mutual's motion is granted in part and denied in part; and the Court makes no provision for allocating the policy premiums.

---

[3] Insofar as the motion requested "denial" of the summary-judgment motion, it was denied and stricken. *See* Minute Order of Feb. 7, 2012 (St. Eve., J.).

[4] Discovery was stayed pending the Court's resolution of the Rule 12(c) motion. Minute Order of August 18, 2011 (Hibbler, J.). The Trustee requested the stay long before it filed the Rule 12(c) motion, and so no discovery has occurred for almost a full year.

A.  The Trustee's Rule 12(c) and 56(d) Motions

The Court denies the Trustee's Rule 12(c) motion for judgment on the pleadings because it is moot in light of the Court's rulings on the summary-judgment motion, which seeks the same judgment and was filed before the Rule 12(c) motion. Moreover, the motion is improper on its face. First, the Trustee is not seeking judgment on its own behalf; instead, it moved for a declaratory judgment *in favor of Penn Mutual*, the plaintiff. Although the Trustee has every right to concede the invalidity of the policy, the Court can find no precedent for granting one party's motion for judgment in favor of its opponent, particularly where, as here, the opponent had already moved for the same relief on its own behalf. Second, Rule 12(c) motions are to be used only when they will not delay the proceedings—something that is all but impossible when filed in the midst of briefing an earlier-filed summary judgment motion. *See* Fed. R. Civ. P. 12(c) (motion must be filed "early enough not to delay trial"); *Riggins v. Walter*, 279 F.3d 422, 427-28 (7th Cir. 1995) (Rule 12(c) motions should be denied as untimely if they create unjustifiable delay). It appears that the Trustee filed a separate Rule 12(c) motion only so it could take a position—that there are no factual disputes and no need for discovery— that entirely contradicts its two responses to Penn Mutual's summary-judgment motion. But for this discrepancy, there is nothing the Trustee presents in its Rule 12(c) motion that it could not, and did not, present in its summary-judgment response.[5]  This gamesmanship is too clever by half.

Moreover, the Court declines to construe the Rule 12(c) motion as a cross-motion for summary judgment, *see* Fed. R. Civ. P. 12(d), because there already is a fully briefed summary-

---

[5] Indeed, despite the inconsistencies, the Trustee's summary-judgment response purports to "fully incorporate[] … by reference" its Rule 12(c) motion and brief. This is a nullity; parties cannot skirt page limitations by adopting arguments from their other filings—particularly where, as here, the parties already requested, received, and used extra pages. L.R. 7.1 ("Any brief or objection that does not comply with this rule shall be filed subject to being stricken by the court"); *Prudential Ins. Co. of America v. Sipula*, 776 F. 2d 157, 161 n.1 (7th Cir. 1989).

judgment motion seeking the same relief (excepting the fate of the premiums). Had the Trustee requested judgment for itself (*e.g.,* on its counterclaim), then construing it as a summary-judgment motion might have been appropriate. But the Rule 12(c) motion does not seek judgment in the Trustee's favor and is largely redundant with the summary-judgment response.

The Court also denies as moot the Trustee's Rule 56(d) motion to stay the summary-judgment motion pending further discovery. Given the Trust's admissions, the Court can resolve the bulk of the summary-judgment motion as a matter of law. The primary factual disputes, which might require further discovery to flesh out, pertain to the fate of the premiums; that issue remains open. But where the Trust admits that Penn Mutual is entitled to judgment, the Court will not postpone the inevitable because the parties dispute the appropriate remedy.

> B. **Penn Mutual's Motion for Summary Judgment**

Summary judgment will be granted when the moving party shows that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Davis v. Ockomon*, 668 F.3d 473, 477 (7th Cir. 2012). The Court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Davis*, 668 F.3d at 477.

The parties agree on almost none of the facts underlying Penn Mutual's claims, as evidenced by the Trustee's response statement pursuant to Local Rule 56.1(b)(3)(B), which vigorously disputes, at length, almost every one of Penn Mutual's factual statements and adds 40 paragraphs of additional material facts (to which Penn Mutual did not reply). However, as noted above, the Trustee concedes that the policy was procured based on material misrepresentations, that the policy owner had no insurable interest in Ms. Spitzer's life at the time of issuance, and that, as a result, the policy is unlawful STOLI. The Trustee concedes not only that the policy is invalid, but that it is void *ab initio*.

6

As to these points, the Trustee's amended answer and summary judgment response constitute binding judicial admissions that are taken out of dispute for purposes of summary judgment. *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005) (explaining that admission in answer to complaint "constitutes a binding judicial admission" that has the effect of "withdrawing the question . . . from contention"). To the extent the Trust admits legal conclusions in addition to facts, it goes beyond what are typically considered judicial admissions. *See generally Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996). Nevertheless, nothing stops an informed party from strategically confessing liability or conceding an argument. *See, e.g., SCA Tissue North America LLC v. N.L.R.B.*, 371 F.3d 983, 988 n.4 (7th Cir. 2004) (holding party to concessions made in opening brief). That is how the Court takes the Trust's repeated statements that the policy was void *ab initio*, even if this is not strictly a "judicial admission."

Because the Trust cannot, and indeed, does not attempt to, create any material factual issue regarding the validity of the life insurance policy, the Court concludes that Penn Mutual is entitled to the declaratory judgment it seeks in Counts I and II of the Complaint. The policy is declared void *ab initio*.

As for the appropriate remedy, a declaratory judgment is relief in itself; none other need be requested or ordered. The Declaratory Judgment Act authorizes the federal courts to enter declaratory judgments in most types of cases "whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a); *see Wachovia Bank, N.A. v. Foster Bancshares, Inc.*, 457 F.3d 619, 621 (7th Cir. 2006) (explaining that a declaratory judgment is a final and appealable with no other remedy). However, either as a remedy flowing from the declaratory judgment or as a separate declaration, Penn Mutual does seek further relief: it asks the Court to "permit Penn

7

Mutual to retain all premium[s] paid." Penn Mutual argues that Illinois law requires this result when a contract is void *ab initio*.

The Trustee's concessions end far short of acceding to this relief. Instead, the Trustee urges the Court to reinterpret Penn Mutual's Complaint as an action for rescission. Rescission is an equitable remedy that cancels a contract and returns the parties to the *status quo ante*, with each returning any benefits received under the contract. *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 356 (1st Dist. 2011); *Puskar v. Hughes*, 179 Ill. App. 3d 522, 528 (2d Dist. 1989) ("[I]nherent in the remedy of rescission is the return of the parties to their proper precontract positions."). This restoration of benefits is required even to a party that is guilty of fraud. *See Puskar*, 179 Ill. App. 3d at 528. The Trustee therefore has a strong interest in reimagining the Complaint as an action for rescission: were the contract "rescinded," the Trustee would be entitled to recoup the monies paid to keep the policy in force, assuming some exception did not apply.

The Court declines to recast this lawsuit as a rescission action. The Trustee has already conceded that the contract is void *ab initio*. Under Illinois law, "the remedy of rescission presumes that a valid contract exists; it does not negate that a contract ever existed." *Allianz Ins. Co. v. Guidant Corp.*, 373 Ill.App.3d 652, 675 (2d Dist. 2007); *see Jensen v. Quik Intern.*, 213 Ill.2d 119, 127 (2004) ("[R]escission presumes the existence of an otherwise valid and enforceable contract."). If rescission is dependent on the existence of a valid contract, it cannot also be the remedy when a contract is void *ab initio*.

Moreover, Penn Mutual's Complaint and summary-judgment motion never mention rescission, and it expressly disclaims any interest in this remedy and argues that the parties cannot be returned to their pre-contract positions. Under Illinois law, to state a claim for rescission, the plaintiff must allege that the parties can be restored to the *status quo ante*. *See*

*Horwitz v. Sonnenschein Nath and Rosenthal LLP*, 399 Ill. App. 3d 965, 973 (1st Dist. 2010); *Wilkonson v. Yovetich*, 249 Ill. App. 3d 439, 445–46 (1st Dist. 1993) (Complaint for rescission dismissed because it would be impossible to return parties to *status quo ante*). Penn Mutual has consistently maintained that the parties cannot be returned to their pre-contract positions because the insurer cannot take back the inchoate "coverage" provided as consideration for the premiums. The Court has it doubts about this premise—after all, if the contract is void *ab initio*, Penn Mutual never provided any coverage. But the bottom line is that this contract was illegal for want of an insurable interest and therefore it is not merely canceled but void *ab initio*. That characterization is not consistent with rescission. Therefore, the Court will not accept the Trustee's invitation to recast the claims and order relief that the plaintiff did not request and emphatically does not want.

The Court declines to order rescission, but the issue of how to dispose of the premiums is not yet solved. Penn Mutual wants this Court to declare that it can keep the premiums. It argues that, purely as a matter of Illinois law, the Court must leave the parties as it finds them upon declaring a contract void *ab initio*—in other words, it must order that Penn Mutual keeps all premiums. Penn Mutual alternatively contends that, even if retention of the premiums is not automatic, it is required because the Trustee was complicit in the fraudulent STOLI scheme and should not be able to use anti-STOLI laws to its benefit. On the other hand, the Trustee argues (to the extent its automatic-rescission argument is denied) that the Court cannot grant summary judgment for Penn Mutual with respect to the premiums because genuine issues of material fact remain as to the alleged wrongdoing by the Trust and Penn Mutual's own culpability.

The parties have not cited, and the Court has not found, any Illinois case law addressing the fate of the premiums when a STOLI contract has been declared void *ab initio*. The parties

have submitted as supplemental authority a decision in a companion case to this one, *Penn Mut. Life Ins. Co. v. GreatBanc Trust Co.*, No. 09 C 06366, 2012 WL 2074789 (N.D. Ill. June 8, 2012) (Chang, J.). But, although this Court agrees with the principles of Illinois law as set forth in that decision, the Court otherwise finds it of little help because the posture of this case is quite different. Whereas the Trustee has conceded in this case that the Rosenblatt-Spitzer policy is an illegal STOLI contract, the legality of the policy remains at issue before Judge Chang. *See id.* at *5 ("Defendants . . . argue that the Windham insurance policy is legal under Illinois law"). Moreover, that case decided only Greatbanc's motion for judgment on the pleadings, denying it because the policy's validity could not be determined upon the pleadings alone. Thus, unlike this Court, which is presented with a summary-judgment motion and an agreement that the policy in question is void *ab initio*, Judge Chang has not yet been called upon to decide the fate of the policy premiums (despite outlining various possibilities).

The Trustee relies heavily on another local case, *PHL Variable Ins. Co. v. Robert Gelb Irrevocable Trust*, No. 10 C 957, 2010 WL 4363377 (N.D. Ill. Oct. 27, 2010), in which the court applied Illinois law and struck—without prejudice—the insurer's request to retain premiums.[6] However, *Gelb* is distinguishable because it was a rescission action; moreover, there were no allegations of fraud. The *Gelb* court held—and this Court agrees—that retention of the premiums was inconsistent with the "rescission" sought by the insurer in that case. *Id.* at 3. Contrary to the Trustee's argument, the many rescission cases it cites, including *Gelb*, are not on point here, because the Rosenblatt-Spitzer policy is not canceled but is void *ab initio*.

---

[6] In *Gelb*, the court granted the trust's motion to strike the insurer's claim to retain premiums but stated it would reconsider the issue if the evidence so warranted after discovery. *PHL Variable Ins. Co.*, 2010 WL 4363377, at *3 n.4. The case settled before the issue was ever revisited.

Better authority for the Trustee comes from Delaware. In *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 774 F. Supp. 2d 674 (D. Del. 2011) ("*Rucker*"), the court declared a life insurance policy void *ab initio* but also held that under Delaware law the plaintiff insurer could not retain premiums. The court rejected the plaintiff's "equitable estoppel" argument because fraud by the defendant insurance trust had not been established on summary judgment, nor was it undisputed that the insurer had clean hands. Although the court had declared the policy void *ab initio*, it nevertheless (and without explanation) went on to rely on rescission cases for the proposition that the insurer could not elect both rescission and retention of the premiums. *See id*. at 681-82.

Penn Mutual, on the other hand, turns to Florida for its best authority. In *TTSI Irrevocable Trust v. Relia-Star Life Ins. Co*., 60 So. 3d 1148 (Fla. Dist. Ct. App. 2011), the state appellate court held that the parties must be returned to the *status quo ante* when the insurer elects rescission, but not when a policy is void *ab initio*. The court reasoned: "[N]either party could elect to give effect to the policy at issue because it was void at the outset. Furthermore, as a general rule, contracts that are void as contrary to public policy will not be enforced by the courts and the parties will be left as the court found them." *Id*. at 1149. Penn Mutual argues that there is no daylight between Florida and Illinois law on this subject.

Although it is aware of no Illinois authority precisely on point, the Court concludes that general principles of Illinois contract law favor Penn Mutual's arguments. Under Illinois law, a life insurance contract without an insurable interest is treated as a wagering contract. *Dresen v. Metropolitan Life Ins. Co*., 195 Ill. App. 292, 293 (1st Dist. 1915) ("plaintiff had no insurable interest in the life of the insured, which fact makes the policy void as a 'wager contract' and therefore against public policy"); *see Charbonnier v. Chicago Nat. Life Ins. Co*., 266 Ill. App.

412, 421 (1st Dist. 1932). Wagering contracts are illegal and therefore void *ab initio*. *Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 355 Ill. App. 3d 156, 164 (1st Dist. 2004) ("[I]f the subject matter of a contract is illegal, that contract is void *ab initio*."); *Hall v. Montaleone*, 38 Ill.App.3d 591, 592 (2d Dist. 1976) (gambling contracts or contracts for an immoral or criminal purpose "are absolutely void and unenforceable"). A contract that is void *ab initio* must be treated as though it never existed; no provision can be enforced. *In re Marriage of Newton*, 2011 IL App (1st) 090683, 955 N.E. 2d 572 (1st Dist. 2011); *ISBA Mutual Ins. Co.*, 355 Ill. App. 3d at 164. "Enforcement of the illegal contract makes the court an indirect participant in the wrongful conduct." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 122 (1993).

The practical effect of this proscription on enforcement is that the Court takes no further action: "[I]n the case of illegal contracts the courts would not, on one hand, undo what has been done, nor on the other, perfect what has been left unfinished." *Sellers v. Phillips*, 37 Ill. App. 74, 76 (1st Dist. 1890); *see also Booth v. Edwards*, 322 Ill. 489, 491 (1926) ("[W]here a contract is illegal, immoral or against public policy or has been entered into through fraud or to accomplish any fraudulent purpose, a court of equity will not at the suit of one of the parties, while the agreement is still executory, either compel its execution or decree its cancellation but will leave such parties in the exact position in which they have placed themselves, refusing all affirmative aid to any of the participants."); *City of Chicago v. Chicago Fiber Optic Corp.*, 287 Ill. App. 3d 566, 573 (1st Dist. 1997) ("[W]here a contract is illegal or against public policy, a court will not, at the urging of one of the parties, set it aside after it has been executed, because to give such relief would injure and counteract the public good"); *Practice Management, Ltd. v. Schwartz*, 256 Ill. App. 3d 949, 955 (1st Dist. 1993) ("the court will leave the parties [to an illegal partnership agreement] where they have placed themselves").

Declining to make any order with respect to the premiums is consistent with this vein of Illinois law and the Court's view that that ordering return of the premiums would be, in effect, ordering rescission as a remedy for a contract that never existed. But as we discussed earlier, under Illinois law, rescission presumes the existence of an otherwise valid and enforceable contract and therefore cannot be the proper remedy when a contract is void *ab initio*. *See Jensen*, 213 Ill. 2d at 127. The *Rucker* case does not persuade this Court otherwise; although it also involved a contract declared void *ab initio*, the premiums were addressed by applying rescission principles that this Court has found inapplicable here.

For these reasons, the Court will not order the return of the premiums in connection with declaring the policy void *ab initio*. Because automatic rescission is all that the Trustee seeks in Count I of its counterclaim, Penn Mutual is entitled to judgment on that claim. But the Court also denies Penn Mutual's request for an affirmative declaration that it can retain the premiums. As Illinois law apparently requires the Court to drop like a hot potato the parties to an illegal contract, the Court will not make any provision for the premiums at this time. The Court emphasizes, however, that its decision is based solely upon its conclusion that Illinois law does not permit the Court to take further action with respect to a contract declared void *ab initio*.

The Court does not consider any exceptions to that doctrine based upon fraud or wrongdoing by the Trustee. *See Gamboa v. Alvarado*, 407 Ill. App. 3d 70, 75-76 (1st Dist. 2011) (money paid in furtherance of an illegal contact can be returned "where (1) the person who paid for the services was not *in pari delicto* . . .with the offender and (2) the law in question was passed for the protection of the person who paid for the services and the purpose of the law would be better served by granting relief than by denying it."). For purposes of Penn Mutual's motion, no such misconduct has been established. Penn Mutual argues that the Trustee had to be,

13

and was, aware it was participating in an unlawful STOLI arrangement. However, the Trustee disputed every fact that Penn Mutual proposed on this topic and proposed its own additional material facts disclaiming any fraud or knowledge of the STOLI scheme and asserting that Penn Mutual itself was aware of the scheme quite early. Penn Mutual did not file any response to this statement of additional material facts and therefore cannot dispute it. *See* Local Rule 56.1(a)("All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party."). For purposes of the summary-judgment motion, then, the Court takes the Trustee's uncontroverted facts as true. *See id.*; Fed. R. Civ. P. 56(e) (when a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). Thus, even if Illinois law prescribes the exceptions discussed by the parties, the summary judgment record here does not allow the Court to apply them against the Trustee.

The final piece of the puzzle is Penn Mutual's request for summary-judgment motion as to Count II of the counterclaim, in which the Trust seeks restitution based upon unjust enrichment. First, the Court rejects Penn Mutual's standing argument because, as the owner of the policy, the Trust is the entity responsible for keeping it up and therefore can sue to recover the payments it made, regardless of the source of the funds it used—apparently the GIII Accumulation Trust. Notably, Penn Mutual named the Trustee, not GIII, in this action requesting retention of the premiums, so it is happy to let this Court issue a binding ruling *against* the Trustee as to the premiums. At any rate, Penn Mutual fails to support its argument that the Trustee, as policy owner, lacks standing. Second, the Trustee has sufficiently established that there are genuine issues of material fact as to Count II of the counterclaim, if only because Penn

Mutual did not dispute the Trustee's statement of additional facts regarding both parties' culpability.[7]

Moreover, the unjust enrichment claim is not precluded by the Court's ruling that the policy is void *ab initio*. Unjust enrichment is an equitable claim that arises when a defendant voluntarily accepts a benefit that would be inequitable for it to retain without paying for it. *Karimi v. 401 North Wabash Venture, LLC*, 2011 IL App (1st) 102670, 952 N.E. 2d 1278, 1274 (1st Dist. 2011). The remedy is restitution, which is calculated based on the unjust gain inuring to the defendant, not on a loss to the plaintiff. *Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill. 2d 248, 257-58 (2004). The theory of unjust enrichment has no application where there is a contract governing the relationship between the parties. See *Karimi v. 401 North Wabash Venture, LLC*, 952 N.E. 2d at 1284. Therefore, it is only because a valid contract never existed that Trustee may pursue its claim of unjust enrichment at all.

Just as the Trustee gave up its argument for automatic return of premiums by conceding that the policy was void *ab initio*, Penn Mutual opened up the unjust enrichment claim by repeatedly disclaiming rescission, which assumes a valid contract. The Trustee will now have the opportunity to prove, if it can, that it would be inequitable for Penn Mutual to retain the premiums (for that is the status quo). The Court will not prejudge this issue given the disputed facts and the potential for further discovery on the equities.

## CONCLUSION

Accordingly, the Court enters judgment for Penn Mutual, and against the Trustee, as to Counts I and II of the Complaint and Count I of the counterclaim, and declares as a matter of law

---

[7] However, the Trustee did not move for summary judgment on its unjust enrichment claim, so the Court need not consider whether the Trustee would be entitled to relief on this basis.

that the Rosenblatt-Spitzer Policy is void *ab initio*. Penn Mutual's motion is denied as to Count II of the counterclaim. The Trustee's pending Rule 12(c) and Rule 56(d) motions are denied.

The previous stay on discovery is lifted. The parties shall submit within 14 days of this Order a plan for discovery on the remaining claim(s), and state their joint or respective positions regarding what, if anything, remains of Plaintiff's Count III (the material misrepresentation claim as to which Penn Mutual did not seek summary judgment) in light of this ruling.

Date: August 15, 2012

Honorable John J. Tharp, Jr.
U.S. District Judge